IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | | |
|---|---|---|
| STATIONS WEST, LLC, an Oregon limited liability company, | ) ) ) | |
| Plaintiff, | ) ) | Civil Case No. 06-1419-KI |
| vs. | ) ) ) | OPINION AND ORDER |
| PINNACLE BANK OF OREGON, an Oregon corporation, BP WEST COAST PRODUCTS, a Delaware limited liability company, and JOEL PARKER, | ) ) ) ) ) | |
| Defendants. | ) | |

Terrance J. Slominski
Slominski & Associates
Commerce Plaza
7150 S.W. Hampton Street, Suite 201
Tigard, Oregon  97223

    Attorney for Plaintiff

Page 1 - OPINION AND ORDER

Mark M. LeCoq
Joel A. Parker
Schwabe, Williamson & Wyatt, P.C.
1600-1900 Pacwest Center
1211 S.W. Fifth Avenue
Portland, Oregon 97204

    Attorneys for Defendant Pinnacle Bank of Oregon

Douglas C. Berry
Graham & Dunn P.C.
Pier 70 ~ Suite 300
2801 Alaskan Way
Seattle, Washington 98121

    Attorney for Defendant BP West Coast Products LLC

Jonathan M. Radmacher
J. Kurt Kraemer
Barry L. Groce
McEwen Gisvold LLP
1100 S.W. Sixth Avenue, Suite 1600
Portland, Oregon 97204

    Attorneys for Defendant Joel Parker

KING, Judge:

Plaintiff Stations West LLC brings breach of contract claims, a claim for wrongful foreclosure, and a claim for interference with contractual relations against Pinnacle Bank of Oregon ("Pinnacle"), BP West Coast Products LLC ("BP"), and Joel Parker. Before the court are the Motion to Dismiss filed by Joel Parker (#25), and the Motion to Stay or Dismiss Action and Compel Arbitration filed by Pinnacle (#18). For the following reasons, I grant the motions.

## BACKGROUND

In 2002, plaintiff requested a loan to construct a gas station and convenience store in Dundee. Pinnacle agreed to provide a construction loan for $2.1 million, and on August 12, 2003, plaintiff entered into a Construction Loan Agreement and Promissory Note. Plaintiff also signed a Line of Credit Instrument ("Deed of Trust") on the gas station as security for the loan. The principal of Stations West, Shaikh I. Husain, and his wife, Aisha Husain, signed Commercial Guarantees.

Plaintiff failed to pay Pinnacle the amount due on the Promissory Note by January 5, 2006, and Pinnacle sent a notice of delinquency on January 17, 2006. On March 3, 2006, Pinnacle's attorney, Joel Parker, sent plaintiff a demand letter placing plaintiff in default. On May 5, 2006, Pinnacle began the process of a non-judicial foreclosure on the gas station by filing and recording a Notice of Default and Election to Sell in the Yamhill County Records.

Plaintiff filed a lawsuit in Yamhill County against Pinnacle, Parker and BP to enjoin the trustee's sale. Judge Carroll J. Tichenor heard plaintiff's motion *ex parte* and required plaintiff to file a $25,000 bond by October 2, 2006. Plaintiff failed to post the bond, and on October 23, 2006, Parker, as Substitute Trustee for the Deed of Trust, sold the gas station by public auction. BP was the winning bidder.

Plaintiff alleges that after it obtained the loan, Pinnacle did not release funds to plaintiff, but instead disbursed funds for construction of the gas station. Plaintiff alleges that Pinnacle recommended the use of a subcontractor who owed money to Pinnacle. Pinnacle paid itself from the loan proceeds rather than paying the subcontractor. Pinnacle also took principle, interest, and late fees, a $42,000 outside broker fee, and a $52,000 loan fee for itself, from the line of credit.

Pinnacle told plaintiff no working capital remained when the station opened, despite the fact that Pinnacle's records disclosed not all of the money had been disbursed.

Since no working capital remained when the station opened, Pinnacle told plaintiff it could withdraw funds electronically to pay BP for gasoline until plaintiff obtained permanent financing, but Pinnacle charged plaintiff NSF fees. Plaintiff was unable to obtain financing because it had no operating capital, owed fees to Pinnacle, and because Pinnacle made misrepresentations to the finance company. Pinnacle subsequently denied a new long term loan for plaintiff, without informing plaintiff of this fact. Pinnacle also reversed payments made to BP, the franchisor for plaintiff's station.

Finally, plaintiff alleges BP breached its franchise agreement with plaintiff by charging more than the zone price required in the contract, by delivering less than full loads of gas but charging for full loads, and by terminating the franchise agreement after colluding with Pinnacle.

## LEGAL STANDARDS

The Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., was enacted "to reverse the longstanding judicial hostility to arbitration agreements." Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24 (1991). The United States Supreme Court has concluded that the FAA demonstrates a "liberal federal policy favoring arbitration agreements." Id. at 25 (citing Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1, 24 (1983)).

Under the Federal Arbitration Act, the court must determine whether a written arbitration agreement exists, whether the agreement "encompasses the dispute at issue," and whether the terms are valid and fully enforceable after "apply[ing] general, state law principles of contract

interpretation." See Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000); Clausen v. Watlow Electric Manufacturing Co., 242 F. Supp. 2d 877, 882 (D. Or. 2002).

A motion to dismiss under Rule 12(b)(6) will only be granted if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir. l986), cert. denied, 479 U.S. 1054 (1987). The review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the non-moving party. Cassettari v. Nevada County, Cal., 824 F.2d 735, 737 (9th Cir. 1987).

## DISCUSSION

I.  Pinnacle's Motion to Stay or Dismiss Action and Compel Arbitration

Pinnacle moves to compel arbitration.

Pinnacle asserts, and plaintiff does not dispute, that the Construction Loan Agreement, the Promissory Note, and the Commercial Guaranty, signed by plaintiff's principal, Shaikh I. Husain, in August of 2003 contains, in relevant part, the following arbitration provision.

> Borrower and Lender agree that all disputes, claims and controversies between them, whether individual, joint, or class in nature, arising from this Agreement or otherwise, including without limitation contract and tort disputes, shall be arbitrated pursuant to the Rules of the American Arbitration Association in effect at the time the claim is filed, upon the request of either party. . . .  Any disputes, claims, or controversies considering the lawfulness or reasonableness of any act, or exercise of any right, concerning any Collateral, including any claim to rescind, reform, or otherwise modify any agreement relating to the Collateral, shall be arbitrated, provided however that no arbitrator shall have the right or power to enjoin or restrain any act of any party. . . .  Nothing in this Agreement shall preclude any party from seeking equitable relief from a court of competent jurisdiction. . . .  The Federal Arbitration Act shall apply to the construction, interpretation and enforcement of this arbitration provision.

Hopkins Aff., Ex. A at 8; Ex. B at 2; Ex. D at 2.

Page 5 – OPINION AND ORDER

Plaintiff argues that Pinnacle has waived the right to compel arbitration because it assigned the right to BP, that the arbitration clause is unconscionable, and that plaintiff has brought claims against Pinnacle that are not covered by the arbitration clause.

    A.    <u>Effect of Pinnacle's Assignment of the Trust Deed to BP</u>

Plaintiff argues that Pinnacle retained no rights when it assigned the Trust Deed and Promissory Note to Pinnacle. Pinnacle's October 3, 2006 assignment to BP stated, "Pinnacle hereby assigns, grants, transfers and conveys to BP . . . all of Pinnacle's rights, title and interest in, to and under the Trust Deed together with that certain Promissory Note . . . from Stations West, as maker, to Pinnacle, as holder. . . ." Slominski Aff., Ex. 1. According to plaintiff, this assignment transferred all of Pinnacle's rights to BP, without retaining the right to compel arbitration. Alternatively, plaintiff asserts that Pinnacle waived its right to demand arbitration when it made the assignment to BP. Pinnacle knew that plaintiff had filed this action at the time it executed the assignment.

Pinnacle responds that plaintiff cannot assert that Pinnacle has breached obligations under the loan documents, yet at the same time argue plaintiff is not required to abide by an arbitration obligation in that very same document. Furthermore, Pinnacle argues it has not waived its right to compel arbitration.

Under the Federal Arbitration Act, "[a] party aggrieved by the alleged failure . . . or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement." 9 U.S.C. § 4. Since plaintiff alleges a claim against Pinnacle for breach of contract while at the same time disclaiming the arbitration provision in that very

Page 6 – OPINION AND ORDER

contract, Pinnacle qualifies as "[a] party aggrieved" and may compel arbitration. See e.g. Smith/Enron Cogeneration Limited Partnership, Inc. v. Smith Cogeneration Int'l., Inc., 198 F.3d 88 (2nd Cir. 1999) (court implies that assignor could compel arbitration); Vainqueur Corp. v. Lamborn & Co., 305 F. Supp. 1007 (D.N.Y. 1969) ("When there is a specific written agreement to arbitrate any dispute that may arise out of an agreement, and one of the parties to that agreement fails to comply with its terms, the other party is entitled to an order compelling arbitration even if that party has irrevocably assigned its rights under the agreement."); Lachmar v. Trunkline LNG Co., 753 F.2d 8 (2d Cir. 1985) (accepts, without deciding, that assignor may participate in arbitration); Tenneco Resins, Inc. v. Davy Int'l, A.G., 770 F.2d 416, 417, 422 (5th Cir. 1985) (same).

In addition, a party seeking to show waiver of a right to arbitrate must show "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that right; and (3) prejudice to the party opposing arbitration resulting from the inconsistent acts." Hoffman Construction Company of Oregon v. Active Erectors and Installers, Inc., 969 F.2d 796, 798 (9th Cir. 1992) (quotation omitted). Waiver of a contractual right to arbitrate is disfavored, and a party arguing waiver bears a heavy burden of proof. Fisher v. A.G. Becker Paribas, Inc., 791 F.2d 691, 694 (9th Cir. 1986). A court must examine whether the right to compel arbitration has been waived in light of the strong federal policy favoring enforcement of arbitration agreements. Id.

Plaintiff cites no cases for the proposition that an assignment may constitute a waiver. Accordingly, I find that Pinnacle's assignment of the Trust Deed and related loan documents to BP does not constitute a waiver in that it is not an act inconsistent with its right to compel

Page 7 – OPINION AND ORDER

arbitration. As explained above, Pinnacle may assert its right to compel arbitration as "[a] party aggrieved."

      B.    <u>Whether the Arbitration Provision is Unconscionable</u>

An arbitration agreement can be invalidated if it is unconscionable. <u>Doctor's Associates, Inc. v. Casarotto</u>, 517 U.S. 681, 687 (1996). The Oregon Court of Appeals considers both procedural unconscionability (contract formation) and substantive unconscionability (contract terms), and identifies a number of factors to consider.

> The primary focus . . . appears to be relatively clear: substantial disparity in bargaining power, combined with terms that are unreasonably favorable to the party with the greater power may result in a contract or contractual provision being unconscionable. Unconscionability may involve deception, compulsion, or lack of genuine consent, although usually not to the extent that would justify rescission under the principles applicable to that remedy. The substantive fairness of the challenged terms is always an essential issue.

<u>Vasquez-Lopez v. Beneficial Oregon, Inc.</u>, 210 Or. App. 553, 567, 152 P.3d 940 (Or. App. 2007) (citations omitted).

Plaintiff asserts that its principal, Husain, was rushed into signing the Promissory Note, and was not told about the arbitration provision. Husain had applied for the loan in 2002, but did not obtain a commitment until July 24, 2003. On August 12, 2003, Pinnacle told Husain that the documents needed to be signed the next day. The parties did not negotiate over the arbitration provision, and the documents were prepared by Pinnacle. Husain felt pressured to sign the documents because he had $100,000 in deposits on the line if the loan did not close.

These facts do not give rise to a concern about procedural unconscionability. There is no evidence of deception; Husain asserts that he was not specifically told about the arbitration provision, but he does not claim that Pinnacle attempted to hide it or incorrectly explained the

Page 8 – OPINION AND ORDER

effect of such a clause. See Vasquez-Lopez, 210 Or. App. at 567-69 (plaintiffs were "fundamentally misled by a half-truth" about effect of arbitration provision). There is also no evidence of compulsion; Husain claims he was hurried in signing the documents, but there is no evidence he was precluded from asking questions or that he did not have time to read through the documents. See Motsinger v. Lithia Rose-Ft. Inc., ___ P.3d ___, 2007 WL 987049, *2-3 (Or. App. Apr. 4, 2007) (plaintiffs did not show "high pressure tactics"). In fact, the evidence suggests that any pressure Husain experienced was self-imposed as he was concerned about the $100,000 in deposits he had made to purchase the property while waiting for the loan proceeds. Furthermore, the arbitration provision is typed in bold in the loan documents and is accessible to the reader.

The fact that plaintiff did not negotiate any of the language in the documents is indicative, if anything, of unequal bargaining power between Pinnacle and plaintiff. That is not enough to demonstrate procedural unconscionability. Motsinger, 2007 WL 987049, *3.

With regard to substantive unconscionability, plaintiff is concerned about the cost of arbitration. Plaintiff claims it would have to pay more than $11,000 just to initiate arbitration with the American Arbitration Association. Since Pinnacle destroyed plaintiff's business, if it is required to arbitrate it will effectively have no remedy. Plaintiff points to several cases where the courts found the arbitration agreements unenforceable due to the costs imposed on litigants, in the consumer context. See e.g. Torrance v. Aames Funding Corp., 242 F. Supp. 2d 862, 868 (D. Or. 2002) (fee provision in arbitration agreement unconscionable).

Pinnacle responds that the parties bargained at arms length. Plaintiff obtained a $2,100,000 loan from Pinnacle. Pinnacle distinguishes the cases upon which plaintiff relies

Page 9 – OPINION AND ORDER

because none of them involved a commercial contract. Plaintiff is not a consumer; it is a commercial business. Pinnacle also disputes that the cost of arbitration is higher than the cost for a trial.

I do not find the arbitration provision to be substantively unconscionable. I note there is nothing in the arbitration provision requiring that the claim be administered by the American Arbitration Association, only that the arbitrator follow the Rules of the American Arbitration Association. As a result, the initial filing fees and case service fees for filing with the American Arbitration Association are inapplicable. Although there is no indication in the arbitration provision as to how costs should be allocated, the Rules permit the arbitrator to allocate arbitrator compensation and administrative fees in the award. Grenley Decl., Ex. 1 at 2. Since "the 'risk' that [plaintiff] will be saddled with prohibitive costs is too speculative to justify invalidation of an arbitration agreement," plaintiff, a commercial entity, does not raise a valid basis to find the provision unconscionable. See Green Tree Financial Corp.-Ala. v. Randolph, 531 U.S. 79, 91 (2000); Motsinger, 2007 WL 987049, *4.

        C.      Whether Plaintiff's Claims are Covered by the Arbitration Provision

The Ninth Circuit has construed "all disputes arising in connection with" the arbitration agreement broadly to reach every dispute between the parties having a significant relationship to the contract and all disputes having their origin in the contract. Simula, Inc. v. Autoliv, Inc., 175 F.3d 716, 721 (9th Cir. 1999) (discussing similar holdings in the Fourth and Tenth Circuit). On the other hand, courts narrowly construe clauses stating that disputes "arising under" or "arising out of" the agreement are to be arbitrated. In that case, arbitration is restricted to disputes

relating to interpretation and performance of the contract itself.  Mediterranean Enterprises, Inc. v. Ssangyong Corp., 708 F.2d 1458, 1464 (9th Cir. 1983).

Plaintiff argues that the arbitration provision does not apply to equitable claims. Therefore, plaintiff's third claim for relief may proceed in court because it is a request that the sale of the property be enjoined and that the sale be declared void.

Pinnacle replies that the language of the provision is broad–it refers to "all disputes . . . between them . . . arising from this Agreement or otherwise . . . " and "any disputes . . . considering the lawfulness . . . of any act."[1]  The sale of the property occurred because plaintiff failed to pay amounts due under the loan documents.  That claim is related to the loan documents and falls within the scope of the arbitration provision.

The arbitration provision covers this dispute.  Plaintiff's request for any equitable relief will be relevant after the arbitrator issues a decision on the merits of the dispute.

II.     Parker's Motion to Dismiss

Parker moves to dismiss plaintiff's claims against him, or to make those claims more definite and certain.

The Complaint alleges, in the first and third claims for relief, that Parker, trustee under the Deed of Trust, began foreclosure proceedings after declaring that plaintiff had defaulted on the loan.  A foreclosure sale was scheduled for October 3, 2006.  Plaintiff alleges that Parker violated various state requirements for foreclosure actions.  Specifically, plaintiff alleges that

---

[1] I noted my concern at oral argument that the provision is overly broad and could be read to apply to fact scenarios that differ significantly from those arising from the ordinary borrower/lender relationship.  However, there is no question that the arbitration provision applies to the case at hand.

Page 11 – OPINION AND ORDER

there were flaws in following the notice requirements of ORS 86.735 and 86.745. Plaintiff asks the court to enjoin the sale of the property and declare the sale void.

Parker points out that plaintiff's right to bring a civil action for these violations is contained in ORS 86.742. That statute requires plaintiff to meet certain criteria in order to seek relief from the court. Specifically, plaintiff must not have received actual notice of the sale at least 25 days prior to the sale, and must state that it could and would have cured the default. Plaintiff did not allege either of these criteria.

In addition, because plaintiff is alleging that the notices were defective since they did not describe the amount owing, plaintiff must also plead that it requested the information from the trustee and the information was not provided. See ORS 86.742(a).

Finally, plaintiff must plead that it suffered "actual damages as a result of the . . . loss of opportunity to cure the default . . . ." ORS 86.742(2)(c). Currently, plaintiff's allegations state only that his damages arise from the acts of Pinnacle; there is no allegation that plaintiff sustained actual damages as a result of any alleged lost opportunity to cure the default. Complaint, ¶¶ 21, 12, 13.

Parker also argues that the sale of the gas station already occurred, based on the fact that plaintiff alleged it was to have occurred on October 3, 2006. As a result, any request that plaintiff makes to enjoin the sale is moot.

Plaintiff responds that ORS 86.742 is irrelevant to its case. Instead, plaintiff alleges that Parker did not comply with his statutory obligations under ORS 86.735.

The only way plaintiff can challenge Parker's failure to comply with statutory obligations, including ORS 86.735, in arranging for the nonjudicial foreclosure of the trust deed is by

bringing a suit under ORS 86.742. In order to do so, plaintiff must meet the criteria of that statute; plaintiff must allege it requested information from the trustee as described in ORS 86.759, allege it did not have actual notice of the sale, that it could have and would have cured the default if the defective notice was proper, and allege the actual damages from its lost opportunity to cure the default. Absent these allegations, plaintiff has no claim against Parker for violation of ORS 86.735. Since plaintiff argues that ORS 86.742 is irrelevant, it appears allowing him to make his first claim for relief more definite and certain would be useless.

Furthermore, plaintiff alleges in his third claim that "any sale made pursuant to the Notice of Default and Election to Sell is void," an allegation that hinges on a claim pursuant to ORS 86.742. Plaintiff also seeks to have the October 3, 2006 sale enjoined. Since it is now April 2007, and plaintiff has no corresponding allegation that the sale has not taken place,[2] plaintiff's third claim for relief against Parker should also be dismissed.

Accordingly, I grant Parker's motion to dismiss claims one and three.[3]

///

///

---

[2] Plaintiff conceded at oral argument that the property had been sold.

[3] I note that plaintiff indicated at oral argument and by letter that it intended to amend its complaint to add additional allegations against Parker. Plaintiff must submit a Motion to Amend its Complaint in order for the court to consider the request.

Page 13 – OPINION AND ORDER

## CONCLUSION

For the foregoing reasons, Pinnacle's Motion for Stay or Dismiss Action and Compel Arbitration (#18) is granted, and Parker's Motion to Dismiss (#25) is granted. With the exception of any motion plaintiff files to amend its complaint, the action is stayed against Pinnacle pending arbitration.

IT IS SO ORDERED.

Dated this       23rd       day of April, 2007.

          /s/ Garr M. King
          Garr M. King
          United States District Judge